Tony Tremayne Lewis (inmate # 98308)
Name

EDCF - PO Box 311

EL Dorado, Kansas 67042
Address

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

Tony T. Lewis , Plaintiff
(Full Name)

CASE NO. 23-3236-JWL
(To be supplied by the Clerk)

V. in their individual and official
capacities

Jeff Zmuda , Defendant (s)

Darcie Holthaus; David C. Ferris...et.

CIVIL RIGHTS COMPLAINT
PURSUANT TO 42 U.S.C.
§1983

### A. JURISDICTION

1) Tony Tremayne Lewis , is a citizen of Kansas
   (Plaintiff)                                    (State)

who presently resides at EL Dorado Correctional Facility (PO Box 311)
                                              (Mailing address or place
EL Dorado, Kansas 67042                      .
of confinement.)

2) Defendant Jeffery "Jeff" Zmuda is a citizen of
              (Name of first defendant)

Topeka, Kansas , and is employed as
(City, State)

Secretary of Corrections of Kansas Dept. of Corrections. At the time the
(Position and title, if any)

claim(s) alleged in this complaint arose, was this defendant acting under the color of state

law? Yes ☑ No ☐ . If your answer is "Yes", briefly explain:

The defendent/respondent violated the Plaintiff's federal rights while

working as an official for the State of Kansas

1

XE-2 8/82        CIVIL RIGHTS COMPLAINT §1983

3) Defendant _David C. Ferris_____ is a citizen of
                    *(Name of second defendant)*

_Leavenworth, Kansas_____, and is employed as
          *(City, state)*

_Business Manager of Central Inmate Bank_____. At the time the
          *(Position and title, if any)*

claim (s) alleged in this complaint arose was this defendant acting under the color of state

law? Yes ☑ No ☐ . If your answer is "Yes", briefly explain:

_When this defendant/respondent violated the Plaintiff's federal rights_

_he was working as an official of the State of Kansas_____

(Use the back of this page to furnish the above information for additional defendants.)
( I was told by clerk not to write on back of pages.
                    See attached documents for list of other respondents/defendents)

4) Jurisdiction is invoked pursuant to 28 U.S.C. §1343(3); 42 U.S.C. §1983. (If you wish to

assert jurisdiction under different or additional statutes, you may list them below.)

_____

_____

## B. NATURE OF THE CASE

1) Briefly state the background of your case:

_Over the course of several years the Plaintiff has been_

_subjected to constitutional violations at the hands of multiple_

_officials, whom are employeed by the Kansas Department of Corrections_

_and/or a contracting agency in the State of Kansas._

_Due to the magnitude of [their] adverse actions the Plaintiff_

_has composed this complaint with consolidated issues of law._

_The details of these particular Constitutional violations are_

_expressed in the following pages of this complaint._

2

Respondent(s) cont...

, 3) Respondent, Phillip C. Marley was a disciplinary officer employed by EL Dorado Correctional Facility. He was responsible for conducting disciplinary hearings according to the law.

4. a) Respondent, Maria G. Bos is a Deputy Warden of EL Dorado Correctional Facility. She is legally responsible for the operation of EL Dorado Correctional Facility and for the welfare of all the inmates in that prison.

5. a) Respondent, Shawn R. Chastain is a Correctional Officer of the Kansas Department of Corrections, who, at all times mentioned in this complaint, held the rank of CSI, and was assigned to EL Dorado Correctional. He is responsible for the safety of all inmates under his supervision.

6. a) Respondent, Alexander Owens is a Correctional Officer of Kansas Department of Corrections, who, at all times mentioned in this complaint held the rank of COI and was assigned to EL Dorado Correctional Facility. He is responsible for the well-being and safety of every inmate under his supervision.

7. a) Respondent, Jarris J. Perkins is a prison official of Kansas Department of Corrections, who at all times mentioned in this complaint held the rank/position of Property Claims Administrator, and was assigned to EL Dorado Correctional Facility. She is responsible for properly investigating claims of lost, stolen, or damaged property of inmates and promptly issuing compensation, when indemnity is due.

8. a) Respondent, Brian M. Buchholz is a Unit team Counselor of Kansas Department of Corrections, who at all times mentioned in this complaint held the rank UTS, and was assigned to EL Dorado Correctional Facility. He is responsible for the welfare of all prisoners on his caseload.

9. a) Respondent, Jeremy L. Hoepner is a Unit team Counselor of Kansas Department of Corrections who at all times mentioned in this complaint held the rank UTM and was assigned to EL Dorado Correctional Facility. He is responsible for the welfare of all inmates on his caseload.

10. a) Respondent, Isaiah J.O. Barker is a Correctional Officer of Kansas Department of Corrections, who at all times mentioned in this complaint held the rank of COI and was assigned to EL Dorado Correctional Facility. He is responsible for providing adequate care to all inmates.

3.

11.
10). Respondent: Darcie Holthaus, is the Secretary of Corrections Designee for KDOC. She is responsible for making sure all inmates under her Managment is treated accordingly to the U.S Constitution.

12. Respondent: Tommy Williams is the Warden of El-Dorado Correctional Facility. He is legally responsible for the operation of El-Dorado Correctional Facility and for the welfare of all the inmates in that prison.

13. Respondent: Brett A. Sissell is an agent of the Enforcement, Apprehension Investigation Unit (EAI) at El-Dorado Correctional Facility. Agent Sissell is responsible for investigating major crimes, and simple crimes toward inmates and staff.

14. Respondent: Jessica Ramsdell holds a position at Central Inmate Bank as an Accountant. She is responsible for ensuring all processed transactions ie. checks are properly forwarded. She is also responsible for redressing errors that occur from her mishandling.

## C. CAUSE OF ACTION

1) I allege that the following of my constitutional rights, privileges or immunities have been violated and that the following facts form the basis for my allegations: (If necessary you may attach up to two additional pages (8h" x 11") to explain any allegation or to list additional supporting facts.)

A) (1) Count I: _See attached document detailing how the Defendents violated the Plaintiff's protected rights under the First, Eighth, and Fourteenth Amendment of the Constitution_

(2) Supporting Facts: (Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.):

_In regard to the constitutional violations of Count I see attached document for supporting facts._

_For the sake of obtaining relief arguments and legal authorities were included_

B) (1) Count II: _Defendants violated the Plaintiff's rights under the First, Eighth, and Fourteenth Amendment when they denied access to receive any reading material. (See attached document for details)_

(2) Supporting Facts: _In regard to the violation of federal rights in Count II See attached document for supporting facts._
_And for the sake of justice and relief arguments and legal authorities were included_

CIVIL RIGHTS COMPLAINT §1983

3

ISSUE"I

**B.** NATURE OF THE CASE

Briefly state the background of your case:

This 1983 BIVENS Action is composed of consolidated constitutional violation of rights from 2021-2023

On or about September 3, 2021 I (Plaintiff) submitted an AWR (Account Withdrawal Request) for $900.00. The request was approved by the Warden at Lansing Correctional Facility, which acted as a notice to prison officials, that the 900 dollar check was for my legal case in Riley County District Court. Specifically speaking, $195.00 was to be used to go toward my petition's filing fee, and the remainder amount was suppose to be directed to my family member who held Power of Attorney.

On or around September 8th, 2021, $900.00 was deducted from my account with Central Inmate Bank; and it was only suppose to be forwarded to the Courthouse in Riley County, Kansas. However, in March of 2022 I received a letter from the clerk of Riley County Court, informing me my petition had to be returned, due to her never receiving my money to file the case.

After receiving that news, I immediately contacted Accounting and Central Inmate Banking to inquire about the whereabouts of my $900.00 check. I was told the check for $900.00 was indeed "received by Riley County Courthouse, and furthermore was told it was cashed by [them] on October 1st, 2021.

I contacted Riley County Courthouse and confronted the clerk about what the prison officials had told me — but the clerk once again assured that nobody at Riley Courthouse received the check, nor cashed it.

I grew more confused and angry, and it was then that I came to the conclusion that the check for $900.00 was stolen and fraudently cashed. Someone had broken the law.

On September 26, 2022 I sent notice to the law enforcement department at EL Dorado Correctional Facility (EAI) and requested that one of their agents come speak to me so I could file a report about my stolen money from my prison account. Yet, that lawful request was ignored, then... denied by a Agent named Brett Sissel.

___I filed a grievance complaint and a property claim, explaining how my $900 check was stolen and why I deserved compensation.

___During the fact finding process for the grievance, my Unit team Counselor was ordered to make some calls and find out what happened to the check for $900.00, Mr. Henke, did so, and what he discovered was: ___My check for $900.00 was mailed to the "Kansas Payment Center" from Central Inmate Bank, in Lansing, Kansas. And instead of applying the 900$ to my affairs in Riley County Court, someone arbitrarily sent the 900$ to place called the Kansas Payment Center, to go toward restitution on a criminal case I wasn't obligated to pay until I was released from KDOC custody.___

When Mr. Henke asked the staff at the Kansas Payment Center why they did [that] without a court order, or without notifying me first? According to the Unit team Counselor - Mr. Henke - the Kansas Payment Center's staff offered no justified answer to that very important question.

___Despite the facts which were learned my grievance and property claim were denied, by the Warden of EDCF, and his designees. I then appealed those denials, to the Secretary of Corrections, but he too denied me any relief or compensation.

___Knowing I planned to sue about my money, I wrote a letter to the State's Attorney General, expressing why the denials I'd received was not only wrong, but most importantly... against the law. ___Till this day, I have not received any response to that letter.

___Armed with the facts, I attempted to resolve the issue by contacting the Business Manager of Central Inmate Banking. The person employed as the Business Manager at Centralized Inmate Bank (**CIB**) is/was David C. Ferris.

Using the electronic grievance/form9 system I confronted the Business Manager of C.I.B with what I learned about my stolen money. I warned him that a 1983 legal lawsuit would fall on him if he did not help me gain my money back, that/and help me gain all the names of the staff involved, with that obvious conspiracy to block my access to the District Courts.

___That form 9 went ignored for quite some time, then, when he did reply he provided no assistance in helping me gain my money back.

___I (Plaintiff) have now turned this issue about my stolen money into a civil matter, for I have now brought this issue to the United States District Court of Kansas.

5.

Arguments
and
Authorities

Issue #1: Plaintiff's stolen $900.00 check
and failure to redress

Contrary to ignorant beliefs and opinions, incarcerated citizens still are protected by certain rights of United States Constitution. And if ever those rights are trampled upon, by prison staff or a government official, a 1983 Bivens action is always the correct course of remedy.

In September of 2021, the Plaintiff utilized his First Amendment right by petitioning to Riley County Court a challenge to redress an illegal garnishment he was subjected to in 2019. See Exhibit A (Motion to Void Restitution Due to Incarceration and Refund)

Central Inmate Banking officials were responsible for directing the plaintiff's money to the proper destination — Riley County's court clerk; however, the facts show that is not what occured. See Exhibit B (Mr. Henke's disposition of investigative facts).

The facts show that the plaintiff's $900 check was unlawfully mailed to a place called The Kansas Payment Center. And what makes the action so unconstitutional is it was done in secret, and in opposition of the Due Process Clause.

The Due Process Clauses prohibits governments, including prison officials, from depriving inmates of life, liberty or property without due process of law.

According to the 14th Amendment, money is property, and a liberty interest, and like other property, it is protected by the Due Process Clauses and the Takings clause of the United States Constitution.

At no time are prison officials, nor any local agency allowed to simply take money out of a prisoner's account without notice or a hearing.

At no time, or date, did the Kansas Payment Center issue a lawful notice to garnish the Plaintiff; and neither did Central Inmate Bank.

The Plaintiff, made it clearly known that a fraction of that $900 check was to satisfy the cost of filing his litigation in Riley County; yet Central Inmate Bank disregarded that information and sent his money elsewhere, while knowing it would enable the Plaintiff to appear unable to properly file his complaint. And because of their actions, the plaintiff's rights governed by the First Amendment was also violated.

See Lewis v. Casey 518 US 343, 350, 135 L Ed 2d 606, 116 S. Ct 2174 (1996) citing Bounds v. Smith, 430 US 817 52 L.Ed 2d 72, 97 S. Ct 1491 (1977): "Prisoners clearly have a Constitutionally protected right of access to the courts."

See also, Ryland v. Shapiro, 708 F.2d 967 972 (5th Cir 1983): "Interference with a prisoner's right to access to the courts, such as a delay may result in a constitutional deprivation."

The facts will show, as a result of Central Inmate Banking's misconduct the Plaintiff was forced to cough over an additional check of $195.00, and wait over a year just to get his petition filed, while all the while, Central Inmate Bank continued to deceive the Plaintiff into thinking his original check for $900.00, was sent and cashed by the proper place — Riley County Courthouse.

• More Constitutional violations arose as Plaintiff asked for Redress.

The Kansas Department of Corrections are in cohoots with the Kansas Bureau of Investigation. (KBI)

The meaning of 'cohoots (herein) does not mainly hold negative meaning — it simply means to be connected with.

The Kansas Bureau of Investigations enlist agents to the Kansas Department of Corrections, and these agents work out of its facilities, in a department named EAI.

EAI stands for ~~Kansas Apprehension and Investigation~~ Enforcement, Apprehension, and Investigation. It is undisputable that all officers/agents employed by EAI are law enforcement officers, whom all hold means and capabilities to investigate crimes committed against prisoners.

When the Plaintiff's $900.00 check was improperly handled, and forwarded to the Kansas Payment Center, a crime of Theft was committed.
     See KSA 21-5801, where the definition of crime is clearly established.
Theft is any of the following acts done with intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services:
(1) Obtaining or exerting unauthorized control over property or services
(2) obtaining control over property or services, by deception

The moment Central Inmate Bank unlawfully exerted control over the Plaintiff's money, the Plaintiff became a victim of a crime.

CIVIL RIGHTS COMPLAINT § 1983

cont... Issue #1

And because so, the Plaintiff had a right to press charges. However, when the Plaintiff reached out to EAI about his stolen money, he was brushed off, ignored, then denied any assistance to investigate, or to help file an official police report.

Eighth

The Plaintiff's constitutional rights under the Eighth Amendment was grossly violated, the moment EAI agent Brett A. Sissell told [him] no help was going to be given, or offered.

Because the facts pertaining to the stolen funds are so clear, it was a breach of duty on these prison officials (EAI) to not even investigate the matter. See cases, such as Alexander v. Perrill, 916 F. 2d 1392, 1395 (9th Cir 1990):

"prison officials cant just sit on your duff and not do anything to prevent violations of rights"

Other prison officials learned of the Plaintiff's stolen money and they also disregarded their duty to act, by providing redress.

Despite sound facts, the Warden - Tommy Williams upheld a denial to the Plaintiffs grievance. He also upheld the denial of his property claim. And his erroneous decision, was backed by the Secretary of Corrections and his designee, which violated the Plaintiff's constitutional rights under the Eighth Amendment, by subjecting the Plaintiff to Deliberate Indifference.

ISSUE 2:   Nature of CASE/ Statement of Facts

In the mid months of 2023, another course of incidents occured — these particular incidents involve the Plaintiff, inmate Tony T. Lewis being denied reading material, through mail and order.

In a prox. April of 2023, The Kansas Department of Corrections implimented an amend, to their IMPP (Internal Management policy & Procedure)

Specifically speaking, this particular amending occured on March, 14, 2023, and it pertained to IMPP # 12-120A.

The new IMPP 12-120A stated that it prohibited inmates · housed in Restrictive Housing · from receiving any books/newspapers/or magazines sent in from outside vendors.

This prohibition, was designed for Restrictive Housing inmates only.

A month after IMPP 12-120(A) was amended and signed into effect, the Plaintiff received four different types of books he'd ordered before the IMPP was amended. These books were processed and forwarded to the Plaintiff (in restrictive housing) on April 7th, 2023, despite the prohibitions of IMPP 12-120(A).

The Plaintiff ordered a book that taught about the legal rights of prisoners around the same time he'd ordered the four books he received on April 7th. Specifically speaking, the name of that "law book," was - Battling The Administration by David J. Meister, and money for this publication was deducted from the Plaintiff's account on March 21, 2023.

The price of Battling The Administration was 44.99.

On or about May 2, 2023, the mailroom at EL Dorado Correctional Facility received two items from a Freebird Publishers - 1.) was Battling The Administration, by David J. Meister; and 2.) a (free) Freebird Publishers Catalog Vol. 3, with 88 pages of full color.

On May 2, 2023, the mailroom staff at EDCF sent the Plaintiff a 'Notice of Mail Censorship form', informing him he could not receive Battling The Administration, due to IMPP 12-120 (A), however the mailroom staff forwarded the Freebird Publisher's sale catalog.

The Plaintiff utilized his right to protest the censorship to the Secretary of Corrections, but he received no response in regard to that particular censorship. The Plaintiff also tried to correct the censorship by contacting prison officials at his facility. For several logical reasons, the Plaintiff urged KDOC to place the censored reading material in his non-seg allowables, in the facility's Property Department, however, that sensible suggestion was denied, by his Unit team Manager - Jeremy Hoepner.

The book, Battling The Administration was 'destroyed', in July of 2023, by EDCF staff.

"Battling The Administration", was not the last censor/seizure that affected the Plaintiff's constitutional right to receive harmless reading material.

On June 19, 2023, the Plaintiff's newest issue, of his Poets and Writers magazine subscription, was seized due to the unconstitutional IMPP 12-120(A).

~~Two week later~~. One week later, on June 28, 2023, the Plaintiff received notice that the mailroom staff seized a harmless Edward Hamilton Bookseller catalog. And on August 30th, 2023, another issue of the Plaintiff's Poets and Writers magazine subscription was seized, all due to the Department of Correction's rule, that inmates in restrictive housing units could nolonger purchase any reading material (or receive them).

Because of these mentioned adverse actions, the Plaintiff comes now through a 1983 Bivens action to enforce his rights, which are guaranteed by the United States Constitution.

## ARGUMENTS AND AUTHORITIES
### I   Plaintiff's rights under the First and Fourteenth Amendment were violated.

The First Amendment protects a prisoner's right to freedom of speech and association.

Freedom of speech and association includes the right to get and read reading material like books and magazines.

Prison officials can keep a prisoner from receiving reading material that they think are dangerous or pornographic but they cannot impliment policies which ban reading material all together. Procunier v. Martinez, 416 U.S 396 (1974)

The Kansas Department of Corrections' Internal Management Policy and Procedure- number 12-120(A), bans reading material all together, and does so while targeting only inmates housed in "restrictive housing units".

The problem at hand [here] is that the IMPP regulation 12-120(A) infringed on the Plaintiff's protected rights, while [it] fell very far from relating to any ~~tax~~ legitimate penological interests. See Thornburgh v. Abbott, 490 US 401

On their face, the regulations distinguish between rejection of a publication "solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant" (prohibited) and rejection because the publication is detrimental to security (permitted)

Now, this Court must answer one question: Were the ~~Plan~~ Plaintiff's banned reading material any detriment to the facility's security? The answer, is not in the slightest way.

The first censored publication - Battling The Administration, was simply a book pertaining to ways a person can legally combat certain adverse actions committed against prisoners.

Now while this particular publication could be considered "unpopular" amongst prison officials, it [legally] cannot be deemed detrimental to security, and surely not to an inmate's ~~rehabilited~~ rehabilitation.

With respect to the siezed Edward Hamilton Bookseller cataleg, there is no way this Court can deem that censorship/ ban appropiate. See Allen v. Higgins, 902 F.2d 682

(in that case, a Court held a Judgment in favor of the plaintiff inmate on his claim that a denial of his right to access to a government surplus catalog did violate his free speech rights under the First Amendment.)

And lastly in question ... the [two] disallowed issues of the ~~inspirational magazine~~ Poets and Writers magazine.

Poets and Writers magazines are positively inspirational periodicals, which helps its ~~subscriber~~ buyers develop a better sense of written communication, for productive purposes. A prohibition, of these magazines isnt just a hinderance to a prisoner's growth and development, but it is a sham toward the department's vowed Mission, Vision, and Beliefs, according to their (KDOC's) IMPP # 01-100 D

IMPP 01-100 D subsection②, claims that the Kansas Department of Correction's "Vision" is transforming Lives for the Safety of all, through i. "Investing in individuals by providing opportunities to acquire new experiences and skills to support personal and professional advancement and future success," and also by ii. "Creating an environment for change and well being by designing systems that encourage positive behaviors, healthy choices and self-improvement."

It should not be dissented, IMPP 12-120 (A) strongly contradicts what KDOC claims above, and because so this Court must agree a serious violation of Constitutional Amendments has occured.

II.     Plaintiff's rights protected by the 14th Amendment was violated also.

The Fourteenth Amendment to the Constitution guarantees everyone "equal protection of the law".

Equal protection means that prison officials cannot treat some prisoners differently than it treats others without a reason which can stand up against the "laws of the land".

When the Kansas Department of Corrections amended their IMPP # 12-120(A), they did so only to target its prohibitions toward a specific group of inmates — prisoners housed in (their) restrictive housing units.

Policies or practices that treat people differently based on their sex, gender, or incarcerational status, must be substantially related to important governmental interests. City of Cleburne, Tex v. Cleburne Living Ctr., 473 U.S 432, 441 (1985)

KDOC's IMPP 12-120 (A) creates an unlawful treatment between inmates in general population and the ones in restrictive housing units.

The policy, punishes an inmate who lives in restrictive housing by prohibiting them from ordering and receiving books/newspapers, or magazines, while they allow inmates in general population to enjoy that constitutional right, despite a general population inmate's incentive level.

Because of IMPP 12-120 (A), an inmate who is of high Incentive level ( Level 2 or Level 3), cannot order any form of reading material, while the same policy allows a general population inmate, who is on privilige restriction or Level 1, to order and receive reading material.

This, is an ambigous form of discrimination, and shall not be accepted under the Equal Protection Clause, because the reason for the prohibition does not substantially relate to any sufficiently important governmento interest.

ISSUE # 3

## Statement of Facts

This particular issue consist of unlawful deprivations of the Plaintiff's priviliges and his money.

In October of 2022 the Plaintiff resided in El Dorado Correctional Facility, and was being forced to live in a cell with no desk, cabinets, or telephone. He resided in B cellhouse - the administrative segregation unit. While in that living unit, the Plaintiff's Unit team counselor was a Mr. Brian M. Buchholz; and mr. Buchholz was responsible for the Plaintiff's well being and proper care while in that living unit.

On approx October 9th, 2022 the Plaintiff's Unit team counselor, took away the plaintiff's tablet priviliges. This meant that the Plainhff could not utilize any tablets, during the days they were passed out for usage.

The Plaintiff contacted Mr. Buchholz and asked, why was his tablet priviliges were taken away? Mr. Buchholz informed him that [he] suspended the tablet's account, due to a belief that the plainhff destroyed the last tablet he was given. Mr. Buchholz said the Plaintiff's tablet privilige was going to be suspended for six months.

The Plainhff denied destroying any tablet, and told Mr. Buchholz that it was aganist the law to punish [him] without first issuing a disciplinary report and having a hearing conducted.

Mr. Buchholz said a disciplinary report was being written, by the officer who alledged the Plaintiff was the culprit, yet no disciplinary report was never issued; nor was any restitution ordered, to cover the damaged tablet. During the time of this unlawful tablet suspension, the Plaintiff had 606.00 $ on his tablet account. He could not access those funds to message his mother, brothers, or his friends and attorney; nor could he utilize his tablet funds to watch movies or listen to music. The Plaintiff had no other source for entertainmer Because the Plaintiff was living in a cell with no telephone, he was able unable to easily order himself commissary, due to the fact he could not use the tablet's commissary ordering system. In order to order "store", he had to risk giving other inmates his telephone-commissary-log-in pincode, so they could enter in his weekly orders. If he didnt do that, the Plaintiff wouldnt have been able to enjoy the privilige of attending commissary, like the other eligible inmates in his unit.

After being transferred to another living unit, and speaking to a prison official about the unlawful tablet suspension, the Plaintiff's new living unit Counselor uplifted the tablet suspension.

Despite not having to go the six months, the Plaintiff sought remedy for the two months he was deprived of using the tablets, and his money on them.

The Plaintiff submitted a property claim in November of 2022, but due to that claim's disappearance he had to resubmit another property claim in February of 2023. In that property claim, the Plaintiff made sure he informed the prison officials that the tablet suspension was improper, and he also explained how the unlawful suspension affected his liberty interest. The remedy he sought was a payment of $4,500.

The property claim was received on March 2, 2023; and the claim was investigated by a prison official named Jarris Perkins.

Ms. Jarris Perkins claimed to have not found any error on behalf of Mr. Buchholz, and therefor denied the Plaintiff relief. She denied this property claim on April 21, 2023, and her erroneous decision was upheld by the Warden of EDCF three days later.

The property claim was then forwarded to the Secretary of Correction, for his "final review"; and on May 11, 2023, his designee - a Ms. Darcie Holthaus upheld the Warden and Ms. Perkin's disapproval.

The Plaintiff believes he should've been granted compensation, for the unlawful suspension, and because so he brings the claim before a Magistrate/judge in a 1983 civil suit.


## ARGUMENT and AUTHORITIES

The United States Constitution is the supreme law of the land and is always to be followed. The Plaintiff's status of "being an inmate" shall never be a just-reason for violating his protected rights as an incarcerated citizen. See Thornburgh v. Abbott 490 US 401: "*Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.*"

In October of 2022  Mr. Brian M. Buchholz violated several of the Plaintiffs Constitutional rights, when [he] unlawfully suspended the Plaintiff's tablet usage, for six months.

The suspension was unlawful because it was committed without any proper Due Process of law.

According to the 14th Amendment of the United States Constitution, all inmates must be given proper due process (before) any deprivation of life, liberty or property occurs. See also the Due Process Clauses, which is something that is established under the 14th Amendment of the Constitution.

"If a deprivation of liberty or property is intentional it is a deprivation for due process purposes, and it is no defense that officials were only negligent in denying the prisoner due process for that deprivation."

The question of law here, now is – How was the Plaintiff's right to due process violated ?

See Irby v. Macht, 184 Wis 2d 831 847-51, 522 N. W 2d 9, 15-17 (1994): "deprivation of due process always occurs by an official's abuse of his or her position."

Mr. Buchholz abused his position when he arbitrarily took away the Plaintiff's right to access his money on his tablet account.

The Plaintiff attempted to have the suspension uplifted by Buchholz ; and he did this by sending Mr. Buchholz a written explaination, explaining how Mr. Buchholz's actions were adverse.

But despite the Plaintiff's merit, Mr. Buchholz continued to make the Plaintiff suffer, by continuing to hinder the Plaintiff's right to enjoy priviliges and an access to funds.

According to the 14th Amendment a prisoner's money is considered their property, and like other property, it is protected by the Due Process Clause and the Takings Clause of the Constitution.

Mr. Buchholz did not witness the Plaintiff destroy the tablet in question. And neither did the officer who was suppose to have written a disciplinary report against the Plaintiff, in connection to the destroyed tablet.

And according to established law, a prison official is never allowed to punish an inmate with restrictions to (their) monies/funds, without proper notice, or given that inmate a hearing.

See Gilbert v. Frazier 931 F. 2d 1581. 1582 (7th Cir 1991): "hearing is required before prisoner is convicted of a disciplinary offense."

Issue 3 (C)

Mr. Brian M. Buchholz's adverse actions subjected the Plaintiff to cruel and unusual punishment, which is a violation of the Plaintiff's rights under the 8th Amendment to the United States Constitution.

The Plaintiff had a right to be free from Cruel and Unusual punishments.

Anytime a prisoner is punished without due process, that action shall always be consider 'cruel and unusual'.

When it comes to the law, and the right or wrong way to punish a prisoner, Mr. Buchholz's conduct was clearly in contravention to cases such as Sandin v. Conner, 515 US 472, 485, 132 L Ed 2d 418, 115 S. Ct 2293 (1995)

This court must agree that the respondent's conduct toward the Plaintiff was a reckless violation of his protected rights, governed by the 8th Amendment; and due to the facts, it subjected the Plaintiff to Cruel and Unusual punishment.

But this court must also be aware that the reckless violation which spawned the Cruel and Unusual punishment also brought forth another sort of blow to the Plaintiff's 8th Amendment rights; specifically speaking, [that blow] was in the form of an act of Deliberate Indifference.

According to the 8th Amendment, "Deliberate Indifference involves both an objective and a subjective component." Sealock v. Colorado, 218 F. 3d 1205, 1209 (10th Cir 2000)

The objective component is met if the deprivation is "sufficiently serious," and the subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety.

A deprivation is always "sufficiently serious", whenever that deprivation results in a reckless violation of a protected right under the U.S. Constitution. Because the Plaintiff's rights were violated like they were, the objective component must be met.

With regard to the second standard, the subjective component must be met as well, because Mr. Buchholz learned exactly how his conduct was affecting the Plaintiff's rights to a protected liberty interest, yet he callously refused to save the Plaintiff from enduring such a significant and atypical hardship.

Because of the two met components, this court must agree that Mr. Buchholz not only injured the Plaintiff with a cruel and unusual punishment, but that he caused more injury with his choice to be deliberate indifferent toward the Plaintiff's overly restrictive conditions.

was a form of deliberate indifference — a violation of the Plaintiff's 8th Amendment right.

When the Plaintiff's property claim was forwarded to the Warden's office, and Mr. Tommy Williams had a duty to properly review the claim and make the appropriate decision whether to uphold Ms. Perkins disapproval, or remand it with relief.

The appropriate decision was to reverse Ms. Perkins' findings, and remand it back with relief to the Plaintiff.

Like the reasons for deliberate indifference, which fell on Ms. Perkins — the same must be done to the Warden of El-Dorado Correctional Facility, because he learned of the constitutional infraction yet refused to do the correct thing to redress the Plaintiff's suffering.

Lewis v. Mitchell, 416 F. Supp 2d 935, 945 (S.D Cal 2005)

The Secretary of Correction's designee (Ms. Darcie Holthaus) then used the same reckless carelessness to deny the Plaintiff relief. by erroneously upholding the decisions of the Warden and Ms. Perkins.

The amount of reckless carelessness she used to disregard the facts of the Plaintiff's claim, clearly established a deliberate Indifference toward the Plaintiff's right to remain free from unlawful treatment.

See Spurlock v. Townes, 661 Fed Appx 536 (Footnote 5)

This court must agree, each of these state officials violated the Plaintiff's rights under the 8th Amendment.

See Alexander v. Perrill, 916 F.2d 1392 1395 (9th Cir 1990) :

Prison officials cant just sit on their duff and not do anything to prevent violations of rights.

Was the Property Claim officer at fault for the Plaintiff's lack of relief?

That answer must be "yes".

According to law, liability must fall on Ms. Jarris J. Perkins -- the property claim officer -- for applying reckless carelessness to the Plaintiff's property claim, and disapproving the relief he was entitled to.

With respect to the Plaintiff's property claim # CA07075145, he seeked compensation in the amount of $4,500.

See Walters v. Grossheim, 990 F 2d 381 (8th Cir 1993): "damage award deemed properly based on a careful assessment of the loss of privileges resulting from an improper retention in a restrictive classification status."

The Plaintiff's situation and this Grossheim case share some similar factors. In Grossheim, the courts held that compensation was necessary because it was the improper adverse action (improper retention) that was the cause of the illegal loss of privileges; whereas, in the Plaintiff's ordeal, it was also some form of adverse action which unlawfully deprived [his] privileges and rights also.

It is a undisputable fact of law ~ that when there is evidence of a compensable injury caused by a violation of the plaintiff's rights, compensation must be rewarded. (Compensable injuries include loss of liberty and injuries to the quality of an individual's life - i.e. like disgusting conditions, or deprivation of privileges)

Because of that, it was an unconstitutional error to disapprove the Plaintiff's property claim.

Using the property claim, the Plaintiff made it known to the (fact finder) that when he was subjected to the unlawful tablet suspension, he was not able to contact the people he usually messages through the tablet's texting service. He also made it known that he was denied access to the substantial amount of funds he had in the tablet. And to be exact, that amount was $606.00. For approx 60 days the Plaintiff could not access his money, due to the unlawful tablet suspension.

In his property claim the plaintiff explained he should be given $75 dollars a day for every day he was subjected to that unlawful treatment. He provided court decisions to supplement his argument.
The property claim officer was made aware of Nalley v. County of Erie, 802 F. Supp 898, 907-08, yet[she] carelessly disregarded what the Plaintiff seemed to be entitled to. Because of Ms. Perkins' reckless carelessness to the obvious injuries Mr. Buchholz's conduct caused, her "disapproval" to the claim property claim

C) (1) Count III: _Prison officials violated the Plaintiff's rights under the Eighth, and Fourteenth amendment when they subjected him to unlawful punishment and deliberate Indifference. (more details attached_

(2) Supporting Facts: _____
_(See attached document for necessary information in regard to the violations of federal rights expressed above.)_

### D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1) Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? Yes ☐ No ☑ . If your answer if "Yes", describe each lawsuit. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

  a) Parties to previous lawsuit:

   Plaintiffs: _____

   Defendants: _____

  b) Name of court and docket number _____
   _____

  c) Disposition (for example: Was the case dismissed? Was it appealed? Is it still

   pending?) _____
   _____

  d) Issues raised _____
   _____

## Relief Requested

1. Declare that Defendant "Jeff" Zmuda violated Plaintiff's constitutional rights when he failed to relieve the Plaintiff from suffering

2. Declare that Defendant David Ferris violated the Plaintiff's constitutional rights when he failed to compensate the Plaintiff's loss of funds.

3. Declare that Defendant Brett Sissel acted with Deliberate Indifference when he failed to investigate the Plaintiff's stolen money and help the Plaintiff file a criminal complaint.

4. Declare that Defendant Jessica Ramsdell violated the Plaintiff's constitutional rights when she tampered with the Plaintiff's mail and money and hindered the Plaintiff's right to access to the court.

5. Declare that Defendant Brian Buchholz violated Plaintiff's constitutional rights when he subjected the Plaintiff to cruel and unusal punishment.

6. Declare that Defendant Jeremy Hoepner violated the Plaintiff's constitutional rights when he failed to allow the Plaintiff to receive non-threatening reading material.

7. Declare that Defendant Jarris Perkins violated the Plaintiff's rights when she failed to provide the Plaintiff administrative relief.

8. Declare that Defendant Darcie Holthaus violated the Plaintiff's constitutional rights when she failed to provide the Plaintiff administrative relief.

9. Award compensatory damages for plaintiff's physical and emotional injuries and punitive damages against each defendant; and

10. Grant Plaintiff such other relief as it may appear Plaintiff is enbtled to.

e)  Approximate date of filing lawsuit _____

f)  Approximate date of disposition _____

1) I have previously sought informal or formal relief from the appropriate administrative

officials regarding the acts complained of in Part C Yes ☑ No ☐ . If your answer is

"Yes", briefly describe how relief was sought and the results. If you answer is "No",

briefly explain why administrative relief was not sought.

_I attempted to obtain administrative relief through the Department's_
_grievance and property claim system, yet my efforts were_
_erroneously denied, or ignored_
_____

### 2)  REQUEST FOR RELIEF

1) I believe that I am entitled to the following relief:

_Plaintiff deserves relief through receiving awards of_
_nominal damages, compensatory damages, and also_
_punitive._
_(See attached document for reasons for relief)_
_Plaintiff needs appointed counsel to properly express why relief is warranted_

_An attorney is needed_ _____         _Tony D Lewis_ #98308
Signature of Attorney (if any)                           Signature of Plaintiff

_____

_____

_____
(Attorney's full address and telephone number)

XE-2 8/82            CIVIL RIGHTS COMPLAINT §1983