**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**


TONY TREMAYNE LEWIS,

        **Plaintiff,**

        **v.**                           **CASE NO.  23-3236-JWL**

JEFF ZMUDA, et al.,

        **Defendants.**


**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

Plaintiff Tony Tremayne Lewis is hereby required to show good cause, in writing, to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.  Plaintiff's Motion to Supplement Complaint (Doc. 5) is granted, and his Motion to Appoint Counsel (Doc. 3) is denied without prejudice, as discussed below.

**I.  Nature of the Matter before the Court**

Plaintiff is a state prisoner at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas.  He proceeds *pro se* and *in forma pauperis*.

Plaintiff includes six (6) counts in the Complaint (Doc. 1) and supplement (Doc. 5).  In Count I, he alleges that his constitutional rights were violated when $900 was removed from his account and not applied as he directed.  He states that on or about September 3, 2021, he submitted an account withdrawal request for $900 to be sent to the Riley County District Court.  A portion

($195) was to be used as a filing fee, and the remainder was meant to go to a family member who held power of attorney for Plaintiff.  The full $900 was deducted from his account at the Central Inmate Bank on September 8, 2021, but Riley County denied receiving a check.  When Plaintiff inquired with the Central Inmate Bank, he was told the check was cashed by Riley County on October 1, 2021.  The Riley County District Court clerk again denied ever receiving a check from Plaintiff.

Plaintiff concluded that the check was stolen and fraudulently cashed.  He contacted the Enforcement, Apprehension, and Investigation ("EAI") Unit at EDCF asking to file a report about the money stolen from his prison account.  EAI Agent Sissell denied the request.  Plaintiff then filed a grievance and a property claim.  Unit Team Henke investigated and discovered that the check was sent to the Kansas Payment Center from the Central Inmate Bank.  It was applied toward restitution on a criminal case.  Plaintiff alleges that he is not obligated to pay restitution until he is released from custody.  Despite that, his grievance and property claim were denied.

Plaintiff then sought relief from the Kansas Attorney General, who did not respond, and the business manager at the Central Inmate Bank, David Ferris.  Plaintiff sent a Form 9 to Ferris but was not successful in retrieving his money.

Plaintiff alleges violation of the Due Process Clause and his First Amendment right of access to the courts. He further argues that EAI Agent Sissell violated the Eighth Amendment by refusing to assist Plaintiff in investigating and recovering the money, and Warden Williams, Secretary Zmuda, and Defendant Holthaus also violated the Eighth Amendment by denying his grievance and property claim.

In Count II, Plaintiff alleges that he has been denied the ability to purchase and receive outside reading materials.  He explains that the KDOC amended Internal Management Policy and

Procedure ("IMPP") 12-120A in April of 2023.  The amended policy prohibited inmates housed in Restrictive Housing from receiving any books, newspapers or magazines sent in from outside vendors.

Plaintiff had ordered several books before the policy was amended.  Four of the books were processed and forwarded to him in Restrictive Housing after the amendment went into effect.  One book, titled "Battling the Administration," was withheld.  Plaintiff received a "Notice of Mail Censorship" form when the book was received at EDCF.  Plaintiff challenged the censorship to the Secretary of Corrections but received no response.  He then asked that the book be placed in his non-segregation allowables for later use, but his request was denied by Unit Team Manager Hoepner.  The book was destroyed in July of 2023.  Two issues of Plaintiff's subscription to Poets and Writers magazine and an Edward Hamilton Bookseller catalog have also been seized pursuant to IMPP 12-120A.

Plaintiff alleges violation of his right to freedom of speech and association under the First Amendment and his right to Equal Protection under the Fourteenth Amendment.

In Count III, Plaintiff alleges that he was unconstitutionally denied the use of a tablet for two months by Defendant Buchholz without due process.  According to the Complaint, Buchholz suspended Plaintiff's tablet privilege due to a belief that Plaintiff had destroyed the last tablet he was given.  However, Plaintiff was never issued a disciplinary report and therefore claims he was punished without due process.  The suspension of his tablet privilege deprived him of access to $606 in his tablet account, meaning he could not message his loved ones or attorney, could not use his money to watch movies or listen to music, and could not order commissary.  Plaintiff submitted a property claim, which was investigated and denied by Defendant Perkins.  Her decision was upheld by Warden Williams and Defendant Holthaus.

In Count IV, Plaintiff alleges that Defendant Marley violated his right to due process and subjected him to cruel and unusual punishment.  Marley was the disciplinary officer assigned to conduct hearings on three disciplinary charges against Plaintiff.  The hearings were scheduled for December 14, 2022.  Marley allegedly did not conduct any hearing but found Plaintiff guilty of all charges and sentenced him to serve 90 days of privilege restriction and to pay $60 in disciplinary fines.  Marley claimed that he contacted Plaintiff by telephone, and Plaintiff became disruptive so he was forced to conduct the hearings without Plaintiff.  Plaintiff obtained a printout of his telephone history and used it to demonstrate to Deputy Warden Bos that no call occurred between him and Disciplinary on December 14.  As a result, Plaintiff's disciplinary convictions were reversed, and the matter was set for a new hearing with a different officer.

In Count V, Plaintiff alleges that Defendant Bos violated his constitutional rights when she failed to update his incentive level upon the reversal of the December 14 disciplinary convictions.  This resulted in Plaintiff being unable to order commissary items like other eligible Level One inmates.

Last, in Count VI, Plaintiff states that he was written up for numerous disciplinary infractions in December of 2022.  Plaintiff's disciplinary hearings were held in absentia, and officials designated Jeremy Hoepner to act as staff assistance to Plaintiff.  According to Plaintiff, Hoepner did not contact him yet represented that Plaintiff had no witnesses and offered no defense to the charges.  Plaintiff was found guilty on all charges.

Then, in June, 2023, Plaintiff filed a grievance alleging that an officer deliberately skipped Plaintiff during meal pass.  Plaintiff alleges that Hoepner investigated the grievance and refused to review security footage, which would have confirmed Plaintiff's grievance, and denied any relief.

Plaintiff names the following defendants: Jeff Zmuda, Secretary of Corrections; David C. Ferris, Business Manager, KDOC Central Inmate Bank; Darcie Holthaus, Secretary of Corrections Designee; Phillip C. Marley, Disciplinary Officer, EDCF; Maria G. Bos, Deputy Warden, EDCF; Shawn R. Chastain, Correctional Officer, EDCF; Alexander Owens, Correctional Officer, EDCF; Jarris J. Perkins, Property Claims Administrator, EDCF; Brian M. Buchholz, Unit Team Counselor, EDCF; Isaiah J. O. Barker, Correctional Officer, EDCF; Tommy Williams, Warden, EDCF; Brett A. Sissell, EAI Agent, EDCF; and Jessica Ramsdell, Accountant, KDOC Central Inmate Bank.  He seeks relief in the form of compensatory, punitive, and nominal damages, as well as declarations that his rights were violated.  (Doc. 1, at 22.)

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)– (2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th

Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the

line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

After reviewing Plaintiff's Complaint, the Court finds that the Complaint is subject to dismissal for the following reasons.

### A. Claims for Damages

Plaintiff seeks to recover compensatory damages for the alleged constitutional violations. However, his claim for damages is barred. Section 1997e(e) provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). This provision bars a prisoner from bringing a claim for compensatory damages without a prior showing of a physical injury. *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Plaintiff's request for damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e) because he has not described any physical injury that was caused by the alleged deprivations of his constitutional rights.

**B.  Count I - $900 check**

Plaintiff alleges violation of the Due Process Clause and his First Amendment right of access to the courts. He further argues that EAI Agent Sissell violated the Eighth Amendment by refusing to assist Plaintiff in investigating and recovering the money, and Warden Williams, Secretary Zmuda, and Defendant Holthaus also violated the Eighth Amendment by denying his grievance and property claim.  Plaintiff fails to state a claim in Count I.

### 1.  Due process

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States "Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citing *Sandin*, 515 U.S. at 484).  The Tenth Circuit ruled in *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999), that "[t]he Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'"  *Id. at 1222* (quoting *Sandin*, 515 U.S. at 486).  To establish a due process claim, the plaintiff must show that he was deprived of a protected liberty interest, and that the deprivation occurred without sufficient due process protections.

The Tenth Circuit "has ruled that property interest claims by prisoners are also to be reviewed under *Sandin*'s atypical-and-significant-deprivation analysis.  *Id.* at 1221-22 (citations omitted); see also *Johnson v. Whitney*, 723 F. App'x 587, 591 (10th Cir. 2018).  Most recently, the Tenth Circuit recognized that it has "little case law applying *Sandin*" analysis to property interests

but that it had granted qualified immunity on due process claims alleging a property interest in prison accounts. *Johnson*, 723 F. App'x at 591-92.

Neither the negligent nor the unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional taking of property does not implicate due process clause where an adequate state post-deprivation remedy is available); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (inmate could not present claim against warden under § 1983 for negligent loss of inmate's property where existence of state tort claims process provided due process). The U.S. Supreme Court in *Parratt* reasoned that where a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur. *Parratt,* 451 U.S. at 541. Under these circumstances, the court observed:

> "It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property, although attributable to the State as action under 'color of law,' is in almost all cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.* . . . [W]here an individual has been negligently deprived of property by a state employee, the state's action is not complete unless or until the state fails to provide an adequate postdeprivation remedy for the property loss.

*Id.* 451 U.S. at 541-542; see also *Hudson*, 468 U.S. at 534. When the alleged property loss is not "random and unauthorized" but pursuant to "an affirmatively established or de facto policy, procedure, or custom, the state has the power to control the deprivation" and must generally give the plaintiff a predeprivation hearing. *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989); *Abbott v. McCotter*, 13 F.3d 1439, 1443 (10th Cir. 1994).

Kansas law provides procedures that inmates must follow when making claims for property loss or damage. K.A.R. 44-16-104; *see also* K.A.R. 44-15-101a(d)(1)(B)(2). These procedures

have been held to constitute an adequate post-deprivation remedy.  *See Milburn v. Nelson*, 221 F.3d 1352 (Table), 2000 WL 1005253, *1 (10th Cir. July 20, 2000) (unpublished).

Plaintiff's claim of deprivation of property without due process is subject to dismissal for failure to state a claim under § 1983.  As explained, Plaintiff's remedies for loss or deprivation of his personal property are the prison administrative procedures and an action in state court, which constitute adequate post-deprivation remedies.

### 2.  Access to the courts

It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions."  *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").  An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53.

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim."  *Lewis*, 518 at 354.  Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement."  *Id.* at 355; *see also Carper v. Deland*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.").  "Impairment of any other litigating capacity is simply

one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis,* 518 U.S. at 356.

Plaintiff's claim of denial of access to the courts is subject to dismissal because he fails to allege adequate facts in support.  Plaintiff claims defendants violated his First Amendment right of access to the courts by failing to send the $900 check to Riley County for use as a filing fee. Plaintiff fails to satisfy the standing requirement of "actual injury" by showing that the alleged interference with court access hindered his efforts to pursue a non-frivolous legal claim.  *Lewis*, 518 U.S. at 351–352; *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996).  The action Plaintiff was filing was a motion to void restitution due to incarceration and refund.  (*See* Doc. 1, at 8.)  It further appears that he was able to file the motion later.  Therefore, he has not demonstrated the actual injury required to state a denial of access to the courts claim.

### 3.   Defendant Sissell

Plaintiff asserts liability against Defendant Sissell on the grounds that he refused to investigate the $900 check.  Plaintiff seems to be arguing that as an EAI officer, Sissell is a law enforcement official and has a duty to investigate and remedy potential crimes, and his failure to do so violated Plaintiff's rights under the Eighth Amendment.

The Eighth Amendment prohibits the infliction of "cruel and unusual" punishment.  *See* U.S. Const. amend. VIII.  A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: an objective component requiring the inmate show he was "incarcerated under conditions posing a substantial risk of serious harm;" and a subjective component requiring that defendants acted with the culpable state of mind referred to as "deliberate indifference."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).  Deliberate indifference exists when an official "knows of and disregards an excessive risk

to inmate health or safety." *Farmer*, 511 U.S. at 837 ("[T]the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir.), *cert. denied*, 546 U.S. 1003 (2005).  Deliberate indifference requires "a higher degree of fault than negligence." *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993) (other citations omitted); *Farmer*, 511 U.S. at 835.

Plaintiff's allegations fail to demonstrate the objective component of an Eighth Amendment claim.  The loss of the $900 check does not amount to a substantial risk of serious harm.  Plaintiff fails to state a claim against Defendant Sissell in Count I.

### 4. Defendants Willliams, Zmuda, and Holthaus

Plaintiff asserts liability against Defendants Williams, Zmuda, and Holthaus on the grounds that they denied his grievance and property claim related to the $900 check.  A viable § 1983 claim must show each named defendant caused a violation of the plaintiff's constitutional rights.  *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020).  However, the allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show the required personal participation.  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013) ("Merely sending grievances to a warden is not enough to attach liability, and the warden's response signified nothing more than a reasonable reliance on the judgment of prison medical staff."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).  Plaintiff fails to state a claim against Defendants Williams, Zmuda, or Holthaus in Count I.

### C.  Count II – Denial of outside publications

Plaintiff alleges violation of his right to freedom of speech under the First Amendment and his right to Equal Protection under the Fourteenth Amendment.

### 1.  First Amendment

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.  A prisoner's claim about censorship of his communications arises under the First and Fourteenth Amendments' guarantee of freedom of speech. *See Procunier v. Martinez*, 416 U.S. 396, 408 (1974) (citing *Lamont v. Postmaster General*, 381 U.S. 301 (1965) (other citations omitted)); *see also Turner v. Safley*, 482 U.S. 78, 85 (1987).

The Supreme Court has repeatedly emphasized, however, that the problems of prison administration should generally be resolved by prison officials and their resolution should be accorded deference by the courts. *See Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001); *Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner*, 482 U.S. at 84–96; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125–26 (1977).  These concerns are even stronger when a state penal institution is involved. *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998). As a result, the Supreme Court has held that "a prison inmate retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Prisoners' free speech rights are "uncontrovertedly limited by virtue of [their] incarceration." *Thaddeus-X v. Blatter*, 175 F.3d 378, 393 (6th Cir. 1999).  Prison officials may impinge on these constitutional

rights if the regulation "is reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89.

To determine whether prison restrictions are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and a legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90.  Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections.  *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell*, 417 U.S. at 822 (sustaining proscriptions on media interviews)); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence).

The restriction at issue here is IMPP 12-120A, titled "Security and Control: Control of Resident Personal Property."  It was effective on March 14, 2023.  It provides that residents in disciplinary restrictive housing are only to have access to basic personal hygiene items, legal materials, and religious material.  IMPP 12-120A.III.B.1.b.  Attachment J to IMPP 12-120A further provides that inmates in restrictive housing may have six (6) books, magazines, or newspapers owned prior to placement in restrictive housing.

This type of content-neutral policy restricting the number of publications a prisoner may have in their cell is routinely upheld.  *Neal v. Lewis*, 325 F. Supp. 2d 1231, 1238 (D. Kan. 2004),

*aff'd*, 414 F.3d 1244 (10th Cir. 2005); *Leachman v. Thomas*, No. 99-20209, 2000 WL 1239126, at

*3 (5th Cir. Aug. 9, 2000); *Boyer v. Taylor*, No. 06-694-GMS, 2013 WL 1332443, at *15 (D. Del.

Mar. 30, 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 551 (1979) (holding content-neutral policy

prohibiting pretrial detainees from possessing any hardbound books, when implemented to address

contraband concerns, did not violate First Amendment principles).

In *Beard v. Banks*, 548 U.S. 521 (2006), the Supreme Court considered a challenge similar

to Plaintiff's claim.  The plaintiff in *Beard* was a Pennsylvania prisoner confined to a special

management or restrictive housing unit, like Plaintiff.  Pennsylvania had a policy denying

newspapers, magazines, and photographs to such prisoners.  *Id*. at 524-25.  The plaintiff claimed

the policy bore no reasonable relation to any legitimate penological purpose and therefore violated

the First Amendment.  *Id*. at 527.  The state "set forth several justifications for the prison's policy,

including the need to motivate better behavior on the part of particularly difficult prisoners, the

need to minimize the amount of property they control in their cells, and the need to ensure prison

safety, by, for example, diminishing the amount of material a prisoner might use to start a cell

fire."  *Id*. at 530.  The Supreme Court upheld the policy, finding the rationale of providing

incentives for better prison behavior satisfied *Turner*'s requirements.  *Id*. at 530-31.

Because IMPP 12-120A appears to have a rational basis reasonably related to important

penological interests, it does not violate the First Amendment despite impinging on the exercise

of First Amendment rights.

### 2.  Equal Protection

"Equal protection is essentially a direction that all persons similarly situated should be

treated alike." *Grace United Methodist Church v. City of Cheyenne,* 427 F.3d 775, 792 (10th Cir.

2005) (quotations omitted); *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006).  An equal

protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). Therefore, in order to succeed on an equal protection claim, plaintiff must allege that he was "similarly situated" to other inmates, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S.78, 89 (1987)); see also *Rider v. Werholtz*, 548 F.Supp.2d 1188 (D. Kan. 2008) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)). A plaintiff alleging an equal protection violation must present specific facts which demonstrate that a "discriminatory purpose" was a motivating factor in the disparate treatment attached in the complaint. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

If Plaintiff is claiming that he was treated differently than inmates in the general population, to succeed he would have to demonstrate that he was "similarly situated" to those general population inmates, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261, quoting *Turner*, 482 U.S. at 89. This claim must fail because Plaintiff was, by definition, not similarly situated to inmates in the general population because he was in restrictive housing. *Id.*

If Plaintiff is claiming he was treated differently than other inmates in restrictive housing, Plaintiff could meet the "similarly situated" requirement. However, he includes no allegations of unequal treatment among such similarly situated inmates. Furthermore, there is a presumption in

favor of validity of prison officials' disparate treatment. *Hill v. Pugh*, 75 F. App'x 715, 720 (10th Cir. 2003) .

Plaintiff's equal protection claim fails because he does not allege facts establishing the essential elements. *See Rider v. Werholtz,* 548 F. Supp. 2d 1188 (D. Kan. 2008) (citing *Riddle v. Mondragon,* 83 F.3d 1197, 1207 (10ᵗʰ Cir. 1996)).  He fails to allege any facts suggesting that he was treated differently from other similarly-situated inmates because he is a member of a suspect classification, or that defendants' acts did not serve a legitimate penological purpose.  *See Fogle,* 435 F.3d at 1261; *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998).  Plaintiff has failed to state a claim for violation of his equal protection rights.

**D.  Count III – Denial of use of tablet**

In Count III, Plaintiff alleges that he was unconstitutionally denied the use of a tablet for two months without due process.  Plaintiff seems to be attempting to bring two due process claims. First, he asserts that the suspension of his tablet privileges was imposed without due process.  In *Sandin*, 515 U.S. 472, the United States "Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Steffey*, 461 F.3d at 1221 (citing *Sandin*, 515 U.S. at 484).  The Tenth Circuit ruled in *Cosco*, 195 F.3d at 1224, that "[t]he Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'"  *Id.* at 1222 (quoting *Sandin*, 515 U.S. at 486).  To establish a due process

claim, the plaintiff must show that he was deprived of a protected liberty interest, and that the deprivation occurred without sufficient due process protections.

The Tenth Circuit has found that "restrictions on an inmate's telephone use, property possession, visitation and recreation privileges are not different in such degree and duration as compared with the ordinary incidents of prison life to constitute protected liberty interests under the Due Process Clause." *Requena v. Roberts*, 893 F.3d 1195, 1218 (10th Cir. 2018) (quoting *Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) (unpublished)). Because the use of a tablet is not a protected liberty interest, Plaintiff's claim that he was entitled to due process before his tablet privileges were suspended is subject to dismissal.

Plaintiff also appears to be making a claim that he was deprived of his property ($606 in his tablet account) without due process. For the same reasons explained above under Count I, Plaintiff's claim here of deprivation of property without due process is subject to dismissal for failure to state a claim under § 1983. As explained, Plaintiff's remedies for loss or deprivation of his personal property are the prison administrative procedures and an action in state court, which constitute adequate post-deprivation remedies.

**E.   Count IV – Disciplinary hearing irregularities**

Plaintiff alleges that Defendant Marley violated his right to due process when Marley found Plaintiff guilty of disciplinary charges and imposed a punishment without a hearing.

"The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law." *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). This guarantee applies to prison inmates, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has established that protected liberty

interests are at issue in the prison setting only when an inmate is subjected to (1) conditions that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) disciplinary actions that "inevitably affect the duration of his sentence." *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012) (quoting *Sandin*, 515 U.S. at 484, 487).

Plaintiff does not allege that the disciplinary actions affected the duration of his sentence, and the punishment imposed, 90 days of privilege restriction and $60 in disciplinary fines, is not the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life that creates a protected liberty interest. *See Beauclair v. High*, No. 14-3020-SAC, 2015 WL 93636, at *3 (D. Kan. Jan. 7, 2015) (citing *Hornsby v. Jones,* 392 F. App'x 653, 655 (10th Cir. 2010), for the proposition that punishments of fines and segregation for a limited number of days generally fail to implicate a protected liberty interest); *see also Marshall v. Laird*, 2013 WL 3226632, at *3 (D. Kan. June 25, 2013) ("[A] denial of privileges does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life, and consequently no liberty interest is at stake where the inmate may be sanctioned with a loss of privileges only."); *Blum v. Federal Bureau of Prisons*, 189 F.3d 477, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (concluding that 90-day disciplinary segregation which left inmate without "store privileges, radio, phone calls, etc." were "such conditions ... not different in such degree and duration as compared with 'the ordinary incidents of prison life' to be a protected liberty interest under the Due Process clause." (citations omitted)).

Plaintiff cites *Gilbert v. Frazier*, 931 F.2d 1581 (7th Cir. 1991), in support of his argument, stating that the case provides that a hearing is required before a prisoner is convicted of a disciplinary offense.  (Doc. 1, at 17.)  Aside from the fact that this Court is not bound by the

decisions of the Seventh Circuit, the issue in *Gilbert* was whether Illinois regulations providing procedures for minor disciplinary infractions conferred a protected liberty interest. *Gilbert*, 931 F.2d at 1581. The court found that Illinois created a liberty interest that otherwise would not exist. *Id.* at 1582. In Plaintiff's case, Kansas has not been found to have done so. *See Grossman v. Werholtz*, 264 P.3d 1060, 2011 WL 6385650, *3 (Kan. App. 2011) ("[I]n Kansas, even if a statute or regulation mandates that punishment will not occur absent specified substantive predicates, there is no due process violation unless the resulting administrative punishment results in a significant and atypical hardship for the inmate over and above the inmate's underlying sentence." *Ramirez v. State,* 931 P.2d 1265, 1267 (Kan. App. 1997), *rev. denied* 262 Kan. 962 (1997)).

Plaintiff fails to state a due process claim in Count IV.

### F.  Count V – Failure to adjust incentive level

Plaintiff alleges that Defendant Bos violated his constitutional rights when she failed to update his incentive level upon the reversal of the disciplinary convictions at issue in Count IV. Plaintiff does not have a protected liberty interest in a particular incentive level. *Thompson v. Coulter*, 680 F. App'x 707, 710 (10th Cir. 2017) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1193 (10th Cir. 2010), for the proposition that "[a]s a matter of law, [a prisoner] has no liberty interest ... in discretionary classification decisions by prison officials"). Therefore, due process protections do not apply.

### G.  Count VI – Defendant Hoepner

Plaintiff alleges that Defendant Hoepner failed to fulfill his duty to act as staff assistance to Plaintiff in several disciplinary hearings, and Plaintiff was found guilty on all charges. The nature of Plaintiff's claim is not clear. He does not appear to be challenging the result of the hearings or the punishments imposed. He states that Hoepner's "conduct is in contravention to the

Law, so now the Plaintiff is holding the defendant accountable through proper federal civil action." (Doc. 5, at 4.)

In a § 1983 action, the complaint must specify "the violation of a right secured by the Constitutional and laws of the United States, and . . . that the deprivation was committed by a person acting under color or state law." *Bruner v. Baker*, 506 F.3rd 1021, 1025-26 (10th Cir. 2007). "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994). Thus, the allegation that a state statute, state constitution, or duty created by state regulations was violated states no claim under § 1983.

Therefore, if Plaintiff seeks money damages from Hoepner for violating Kansas regulations or other prison policy, such allegations fail to state a federal constitutional violation under § 1983. "[N]ot every violation of state law or state-mandated procedure is a violation of the Constitution." *See Massey v. Helman*, 259 F.3d 642, 647 (7th Cir. 2001) (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)).

Plaintiff further alleges that Hoepner did not conduct an adequate investigation of a grievance. To the extent Plaintiff seeks to state a claim against Hoepner based on his failure to failure to investigate or resolve a grievance in a manner satisfactory to Plaintiff, such claim is not actionable under § 1983. "[T]he state's voluntary provision of an administrative grievance process [does not] create a liberty interest in that process" or confer constitutionally protected substantive rights upon the inmates. *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *Burnett v. Allbaugh*, 715 F. App'x 848, 851 (10th Cir. 2017) ("There is no independent constitutional right to state administrative grievance procedures.").

Plaintiff fails to state a claim in Count VI.

**IV.  Motion to Appoint Counsel**

Plaintiff asks the Court to appoint counsel to represent him because he does not have a law degree or access to funds to hire an investigator.  (Doc. 3, at 3.)

There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears quite capable of adequately presenting facts and arguments. The Court denies Plaintiff's request for appointment of counsel without prejudice.

**V.  Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why the claims and defendants discussed above should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file

a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the Court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (23-3236-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

The amended complaint should concisely (1) raise only properly joined claims and defendants; (2) allege sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) allege sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **December 17, 2023,** in which to show good cause, in writing, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED THAT** Plaintiff is granted until **December 17, 2023,** in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Supplement Complaint (Doc. 5) is **granted**.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Appoint Counsel (Doc. 3) is **denied** without prejudice.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated November 17, 2023, in Kansas City, Kansas.**

> **S/  John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**