IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Tony Tremayne Lewis
_____ Plaintiff

v.                                              case no: 23-3236-JWL

Kansas Dept' of Corrections
_____ Defendant

## Motion to file 2nd Supplemental Claims

The Plaintiff comes now requesting that this Court accept his additional claims. Attached with this motion is the required paperwork (another Amended 1983 complaint)

The Plaintiff wants to introduce into his already exsisted complaint 3 additional incidents involving several violations of the Plaintiff's constitutional rights.
Most of the defendants the Plaintiff comes now discussing were previously dismissed in this court's most recent judgement order, however, due to the facts and evidence presented herein, the Plaintiff believes this court should reinstate those Defendants and hold each one under their respected liability.

The Plaintiff has only amended his 1983 complaint once and when he did the Defendants werent given any service order yet. The reason the Plaintiff could not impliment the claims herein (then) was because the Plaintiff couldnt provided some necessary documentations in order to show good cause why the claims are indeed unconstitutional.

Armed now with those particular documentations, the Plaintiff comes now argueing the following:

## Count 7:

**Background**: During the month of March of 2023 the Plaintiff was being held at El Dorado Correctional Facility and was housed in one of the Restrictive Housing Units (RHU). The Plaintiff's cellmate during this time was a notoriously violent inmate named Alfonso Briscoe #66034.
On March 16, 2023 the officer's duty was to conduct showers for the Plaintiff's side of cellhouse. Before March 16th of 2023 the last time the Plaintiff and his cellmate were allowed to shower was three days prior.
Before the cellhouse officers made it to the Plaintiff's cell, the Plaintiff and his cellmate had agreed that Briscoe would leave to shower and the Plaintiff would stay in the cell and bathe out the sink, so he could prevent their property being destroyed or "lost" as a result of a lousy cell search.
The officers conducting showers on March 16, 2023 were CSI Shawn R. Chastain and COII Alexander Owens.
When CSI Chastain came to take cell 151 to the showers (cell 151 is the Plaintiff's living quarters) he looked inside and noticed that there was a sheet dropped on the Plaintiff's bed area. Because of the sheet dropped on the Plaintiff's bed area, CSI Chastain decided to take away shower priviliges for not only the Plaintiff but also inmate Briscoe - who stood at the door dressed ready for showers.

1.

Due to the facts of this situation this court cannot say CSI Chastain and COI Owens were not deliberately indifferent to the Plaintiff's right to remain safe from obvious risks of serious bodily harm.
See Farmer v. Brennan, 511 US 825, 834, 114 S. Ct 1970, 128 L. Ed 2d 811 (1994)
" the prison official must have a sufficiently culpable state of mind to violate the constitutional standard. The standard of culpability necessary to an Eighth Amendment violation is one of deliberate indifference...
A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"

CSI Chastain was the supervising officer, on March 16th 2023 and was made aware of the threat the moment he heard Inmate Briscoe express it, toward the Plaintiff; and as the supervising officer CSI Chastain had an official duty to 1) remove the Plaintiff from the excessive risk which he created –
"He" being CSI Chastain, and 2) discipline Inmate Briscoe for the threat made to the Plaintiff; he did neither.
KAR 44-12-306 (Threatening or Intimidating any person) is a regulation CSI Chastain is familiar with, and it partial states: "An inmate shall not threaten or intimidate, either directly or indirectly any person or organization."

Another prison regulation both Chastain and Owens should have been familiar with is the Kansas Department of Corrections' Internal Management Policy and Procedure number 01-100D subsection of "Mission, Vision and Beliefs" which states: "Our Vision... Fostering dignity and safety by establishing practices and policies that honor individual differences with mutual dignity and respect and all feel safe and supported."

The disregard to the Plaintiff's safety by both of these Defendants was in contravention to the IMPP stated above.

This court must be advised, the Plaintiff's cellmate (Inmate Briscoe) was a documented gang member with a very violent prison record, who is serving a life sentence for murder; which are all reasons they should have took the necessary precautions to prevent Inmate Briscoe of making good his threat toward the Plaintiff.

There were isolated places within the unit the Plaintiff could have been placed, but the prison officials refused to entertain that option, despite the numerous pleas from the Plaintiff to do so.

The Tenth circuit has held clear admonishments toward the type of adverse actions CSI Chastain and COI Owens affected the Plaintiff with, on March 16, 2023; see Harris ex rel. Harris v. Maynard, 843 F.2d 414, 416 (10th Cir 1988)

"Where one's very right to life is at stake and where prison officials control the conditions of confinement thereby reducing the prisoner's ability to protect himself, it takes no great acumen to determine that, constitutionally, prison officials may not exercise their responsibility with wanton or obdurate disregard for or deliberate indifference to the preservation of the life in their care... The same is true under the Fourteenth Amendment due process clause... We conclude that wanton or obdurate disregard of or deliberate indifference to the prisoner's right to life as a condition of confinement is a substantive constitutional deprivation whether it falls under the due process clause or the Eighth Amendment."

This case, isn't a claim of "excessive force", but it is a constitutional claim addressing "wanton disregard"... to a prisoner's safety. And it was because of that wanton disregard [this prisoner] was harmed.

Defendants CSI Chastain and COI Owens are liable for the violation of the Plaintiff's Eighth Amendment rights. See Haley v. Gross, 86 F.3d 630

In the Haley case, Haley was awarded a very large remedy for prison officials' wanton disregard to his safety. Just like the Plaintiff, the officials were called to the cell and things were said which created awareness that if no care was implied, something harmful was going to occur. And just like in Haley v. Gross, the Plaintiff repeatedly requested to be moved away from his threatening cellmate.

The court in Haley v. Gross pointed out - "Thus Haley did not need to prove that any of the defendants intended that Wilborn harm him or that they actually believed that Wilborn would harm him. It is enough for Haley to show that the defendants actually knew of a substantial risk that Wilborn would seriously harm him." Wilborn was Haley's cellmate.

The Plaintiff didn't get severally burned as a result of these defendant's deliberate indifference, however, he did get harmed... and was effected pysically by that harm inflicted. See Exhibit Y2

The Plaintiff has successfully stated a claim of Deliberate Indifference.

See Clemmons v. Bohannon, 918 F.2d 858 (10th Cir 1990) (quoting Rhodes v. Chapman 452 US 337)
"A prisoner's conditions of confinement may constitute punishment prohibited by the Eighth Amendment unless such conditions ~~of confinement may constitute punishment prohibited by the~~ are "part of the penalty that criminal offenders pay for their offenses against society."

Being deprived of the prison's daily meals is not part of the penalty the Plaintiff was sentenced to endure. In fact, the Eighth Amendment prohibits such deprivations. Inmates of Occoquan v. Barry, 269 US App DC 210, 844 F.2d 828, 836-839 (DC Cir 1988) ("deprivations" that trigger eighth amendment scrutiny are deprivations of essential human needs --- Food, shelter, health care, and personal safety.)

When Mr. Barker choose to deny the Plaintiff the opportunity to accept his dinner tray he triggered ~~trigger~~ an Eighth Amendment scrutiny by subjecting the Plaintiff to an ~~unus~~ unusual and atypical hardship. Thus, proving that the Plaintiff has stated a claim under the Eighth Amendment.

- The Defendant Isaiah J.O Barker is also responsible for violating the Plaintiff's rights under the 14th Amendment.

  The Fourteenth Amendment to the Constitution guarantees everyone "equal protection of established laws"

  Equal protection means that a prison or a prison official arent allowed to treat one or some prisoners differently than they treat other similarly situated prisoners.

  On June 6th 2023 the Plaintiff was similarly situated to the other inmates who resided in his cellhouse and who ate the regular diet meals which came from the prison's kitchen.

  The Kansas Department of Corrections' IMPP # 20-101A states: "Each resident is to receive the same quality and portion of food daily."

  Because Mr. Barker worked for KDOC, he had a duty to oblige to this particular regulation of proper policy and procedure; yet, that is not what he did.

  On June 6, 2023 every inmate on the Plaintiff's tier received an opportunity to receive their food, all except the Plaintiff... and the person responsible for that [was] the Defendant Isaiah J.O Barker. Thus, this Defendant can not escape from liability, in connection to the violation of the Equal Protection Clause under the 14th Amendment.

- Defendants Jeremy Hoepner, Tommy Williams, Darcie Holthaus, and Jeff Zmuda (and their liability for).-

  Each one of the Defendants listed above acted with a wanton disregard by refusing to "properly" investigate the Plaintiff's complaint against the corrections officer Mr. Barker.

  The Defendant Jeremy Hoepner was the first prison official to be confronted with Grievance CA22890. See Exhibit Z1

  Considering the alledgation presented by the Plaintiff, Hoepner had a duty to act as an impartial fact-finder in finding out whether or not COI Barker actually did deliberately deny the Plaintiff his last meal of the day. Hoepner did not act impartial; in fact his approach at locating the truth was quite prosecutorial, mainly because he deliberately refused to review the security footages, as the Plaintiff clearly had requested.

  After Hoepner erroneously denied the Plaintiff's grievance, the Plaintiff appealed that ~~been~~ denial up to the Warden of EDCF, and the appeal, again, clearly requested for the Warden to simply review the cameras within B cellhouse from June 6th.

  Just like Hoepner, the Warden Tommy Williams had a duty to properly investigate the complaint by reviewing the security footage to see whether or not Mr. Barker's false accusations were true. And again, just like Hoepner... Williams deceided to take his officer's word as being golden and denied the Plaintiff's complaint, without reviewing the security footage as the Plaintiff had clearly requested. See Exhibit Z5

  The next Defendants who learned of the incident on 6th of June 2023, were Jeff Zmuda and his "designee" Darcie Holthaus. But not only did they learn of Mr. Barker's misconduct, they also were told about the Warden's and Hoepner's failure to review the security footages, in regard to grievance CA22890. See Exhibit Z2

The Plaintiff stated: "If the camera would have been reviewed, the fact-finder would have saw that COI Barker did not stop at my cell and open my food pass..."

5.

The Plaintiff believes he has shown the proof that these supervisors' corrective inaction amounted to a deliberate indifference which can't be disregarded by a court of law. Thus, it should not be a problem to agree that Defendants Jeremy Hoepner, Tommy Williams, Darcie Holthaus, and Jeff Zmuda all violated the Plaintiff's 8th amendment right by their act of refusing to review the security footage as the Plaintiff had requested.

- ## Violations of the 14th Amendment

These Defendants' corrective inactions not only infringed upon the Plaintiff's 8th Amendment right, but also it trampled the Plaintiff's right to Due Process which is governed under the 14th Amendment of the Constitution.

A prisoner's effort at obtaining administrative relief requires Due process of law; because the fact finding process of a grievance is no different than the fact finding process of a prison's disciplinary hearing, and a disciplinary officer shares the same "duty to investigate" as each Defendant does considering the circumstances.

Whenever a prisoner requests the prison's security camera as (a witness) a disciplinary officer or grievance officer has a duty to look into that prisoner's request; and a failure or refusal to do so constitutes a violation of that prisoner's procedural due process rights. See Walker v. Bates 23 F.3d 652

In Walker v. Bates the inmate requested several witnesses whose purpose was to corroborate the inmate's defense, and it was because that 'fact finder' refused to call those witness, the court deemed his inactions unconstitutional.

The Plaintiff didn't request any other officers or another inmate as a witness, but he did request the security footage to act as his corroborating witness in regard to grievance No. CA22890.

If the Defendants would have did what the could by reviewing the camera (as the Plaintiff requested) the findings would have changed the outcome of those attempts at administrative relief and the Plaintiff could've been made whole, for the loss he suffered on June 6, 2023, at the hands of Defendant Barker.

The law is simply established - a meaningful investigation was required before the Plaintiff's complaints were denied and his request for compensation refused.

The Plaintiff had a constitutional right to have that "request-for-review-of-camera" sought out/entertained, yet each one of these supervisors employeed by the KDOC choose to disregard the Plaintiff's right to procedural due Process, by wantonly refusing to review the security footages from June 6, 2023.

This court must agree, the Plaintiff's 14th Amendment right was violated by Defendant Jeremy Hoepner; Defendant Tommy Williams; Defendant Darcie Holthaus; and Defendant Jeff Zmuda - through the therey of "Supervisory Liability".

- ## Violation of the 1st Amendment   "Conspiracy-to-coverup" claim

This first Amendment claim consist of an argument of a "conspiracy-to-coverup."

Each prison official of supervisor status is connected to this conspiracy to coverup claim. Specifically speaking, the liability within this claim must fall on Defendants Jeremy Hoepner, Tommy Williams, Darcie Holthaus, and of course the Secretary of Corrections Jeff Zmuda. See Vasquez v. Hernandez, 60 F.3d 325, 329 (7th Cir 1995) ("stating that the 'cornerstone' to a First Amendment right-of-access claim is 'that the conspiracy had prevented a full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiff's right of access and that the claim is not actionable where the cover-up failed to achieve such ends.)

If the Plaintiff's case wasn't deemed actionable in the Hernandez proceeding, this Plaintiff's case surely is.

The cover-up tactics in this case didn't fail to acheive such ends, as it obviously did in Vasquez v. Hernandez.

The Plaintiff requested that the KDOC review the security footage during each phase of his effort at administrative relief. Again. See Exhibits Z2 and Exhibit Z

Each reasonable request made by the Plaintiff was disregarded; and it was those wanton disregards which became the main ingredients to the conspiracy at hand here in this claim.

7.

<u>Issue #9</u>

## Liability of the <u>Kansas Department of Corrections</u>

Using the claim of "vicarious-liability", the Plaintiff desires to impliment this governmental entity into this 1983 Bivens complaint, as a standing "Defendant", so it can provide indemnification for the adverse actions committed by its employees over the coarse of two years.

According to certain state and federal laws, this court can allow KDOC itself to be sued for damages. See Spurlock v. Townes, 661 Fed. Appx 536 (10th Cir.)

In Spurlock v. Townes the Plaintiffs were permitted to sue the prison employees for their misconduct <u>and</u> the penal corporation those prison officials were employed by... which was CCA - "Corrections Corporation of America."

In Kansas, there is state law which makes companies such as the Department of Corrections strictly liable for the "tortious conduct" of their employees. See K.S.A §75-6103 - "Liability of governmental entities for damages caused by employee acts or omissions, when; applicable procedure."

a.) Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state.

K.S.A 75-5201 (Purpose and Construction) applys mainly to the Kansas Department of Corrections, and clearly establishes the following standards: "The legislative purpose in enacting this act shall be deemed to be establishment of policy of treatment of persons convicted of felonies in this state by placing maximum emphasis on rehabilitation of each such person while in the custody of the state or under the jurisdiction of the courts of the state, consistent with the interests and safety of the public, so that a maximum of persons so convicted may be returned to private life in the communities of the state with improved work habits, education, mental and physical health and attitudes necessary to become and remain useful and self-reliant citizens. It is the intent of the legislature that judges, the secretary of corrections, his or her agents, subordinates and employees and the Kansas adult authority, its agents, subordinates and employees will construe and apply this act and acts of which it is amendatory or supplemental liberally to rehabilitate, train, treat, educate and prepare persons convicted of felony in this state for entry or reentry into the social and economic system of the community upon leaving the custody of these state agencies and officers."

According to the facts within this 1983 Bivens complaint, the civil wrongs which were committed against the Plaintiff, over a coarse of two years, were not condusive to the Plaintiff's impoved education, mental health, physical well being, and neither his attitude; and because so, the Kansas Department of Corrections can not dodge liability. See Howard v. Adkison, 887 F.2d 134 ("A single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability. However, as the number of incidents grow, and a pattern begins to emerge a finding of tacit authorization or reckless disregard becomes more plausible.")

Moreover, and lastly, KDOC [itself] can not hold the entitlement to plead "good faith" as a defense to liability.

With all said the Plaintiff request the Kansas Department of Correction (as an entity) to be included into this complaint so they can be sued in their individual capacities... an action pursuant to Spurlock v. Townes 661 Fed Appx 536 (10th Cir)

9.