IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**TONY TREMAYNE LEWIS,**

    **Plaintiff,**

    v.                                                        CASE NO. 23-3236-JWL

**JEFF ZMUDA, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff brings this pro se action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Plaintiff is an inmate at the El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. On November 17, 2023, the Court entered a Memorandum and Order and Order to Show Cause (Doc. 6) ("MOSC") granting Plaintiff an opportunity to show cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. Plaintiff filed a purported Amended Complaint (Doc. 7) and a response to the MOSC. The Court entered a Memorandum and Order (Doc. 12) ("M&O") dismissing all of the claims other than Plaintiff's First Amendment claim and directing the officials responsible for the operation of EDCF to prepare a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 12, at 8.) The *Martinez* Report (Doc. 19) has now been filed, and the Plaintiff has filed a response (Doc. 20) to the Report. The Court will screen the Complaint in light of these filings. The Court's screening standards are set forth in the MOSC.

1

**I. Nature of the Matter before the Court**

Plaintiff alleges that he was denied the ability to purchase and receive outside reading materials while in Restrictive Housing. He explains that the KDOC amended Internal Management Policy and Procedure ("IMPP") 12-120A in April of 2023. The amended policy prohibited inmates housed in Restrictive Housing from receiving any books, newspapers or magazines sent in from outside vendors.

Plaintiff had ordered several books before the policy was amended. Four of the books were processed and forwarded to him in Restrictive Housing after the amendment went into effect. One book, titled *Battling the Administration*, was withheld. Plaintiff received a "Notice of Mail Censorship" form when the book was received at EDCF. Plaintiff challenged the censorship to the Secretary of Corrections but received no response. He then asked that the book be placed in his non-segregation allowables for later use, but his request was denied by Unit Team Manager Hoepner. Two issues of Plaintiff's subscription to Poets and Writers magazine and an Edward Hamilton Bookseller catalog were also seized pursuant to IMPP 12-120A.

Plaintiff alleges violation of his right to freedom of speech and association under the First Amendment.

Plaintiff names Jeff Zmuda, Secretary of Corrections, as defendant. He seeks relief in the form of compensatory, punitive, and nominal damages, as well as declarations that his rights were violated. (Doc. 1, at 22.)

**II. The *Martinez* Report**

The Report states that Plaintiff resided in restrictive housing from November 15, 2022, until March 12, 2024. (Doc. 19, at 2.) He was placed there after disciplinary convictions. He currently resides in the general population. *Id.* at 3.

IMPP 12-120A is titled *Control of Resident Personal Property*. The stated rationale for the IMPP is:

> Residents incarcerated at a Department of Corrections correctional facility are permitted to possess and obtain a reasonable amount of personal property. The allowable personal property a resident can possess must not constitute a threat to the safety, order and security of the facility staff, residents and public.

On March 14, 2023, IMPP 12-120A was revised. It was revised again on March 21, 2024. The policy Plaintiff complains of is in Attachment J of both versions. According to the Report, the latest revision removes the requirement that "books/magazines/newspapers" be possessed prior to entering restrictive housing. (Doc. 19, at 3.) The IMPP now allows restrictive housing residents six books/magazines/newspapers "[f]rom publisher or vendor only but may be purchased by third parties for a resident's use." *Id*.; Doc. 19-6, at 34.

The Report concludes by asserting that Plaintiff's claim is moot because the policy has been changed and because Plaintiff no longer resides in restrictive housing. The Report further states that Plaintiff had access to EDCF's library while he was in restrictive housing, and he checked out five books during the period the policy was in force. *Id*. at 4. Two of those books covered a similar topic as *Battling the Administration* (*Law for Dummies* and *Prisoners' Self-Help Litigation Manual*). *Id.* In addition, the Report denies that *Battling the Administration* qualifies as legal mail subject to the applicable procedures. *Id*. at 3-4.

### III. Plaintiff's Response to the *Martinez* Report

Plaintiff restates his claim, explaining that he was "not able to order or receive any purchased publications from March 2023, to the time he was released from El Dorado's restrictive housing unit, in March of 2024." (Doc. 20, at 1.) He complains that what he refers to as a "legal book" (*Battling the Administration*, by David Meister) was "unlawfully seized and forced to be mailed out [of] the facility (at the Plaintiff's expense), along with several magazine issues of Poets

3

and Writers, and a few Edward Hamilton Bookseller catalogs." *Id.* Plaintiff argues that IMPP 12-120(A) was an unlawful "blanket ban," citing *Williams v. Brimeyer*, 116 F. 3d 351 (8th Cir. 1997) and *Murphy v. Missouri Dep't of Corrections*, 814 F.2d 1252 (8th Cir. 1987). *Id.* Plaintiff also argues that *Battling the Administration* should have been considered "legal material" under the IMPP definitions and forwarded to him. *Id.* at 3. He alleges that he was denied the book as a way to hinder his pursuit of legal action. *Id.* at 4. Plaintiff concludes by requesting $350,000 in punitive damages.

## IV. DISCUSSION

After reviewing Plaintiff's Complaint, the *Martinez* Report, and Plaintiff's response, the Court finds that the Complaint is subject to dismissal for two primary reasons. First, Plaintiff fails to state an actionable claim.

As explained in the MOSC, the IMPP is the type of content-neutral policy restricting the number of publications a prisoner may have in their cell that is routinely upheld. *Neal v. Lewis*, 325 F. Supp. 2d 1231, 1238 (D. Kan. 2004), *aff'd*, 414 F.3d 1244 (10th Cir. 2005); *Leachman v. Thomas*, No. 99-20209, 2000 WL 1239126, at *3 (5th Cir. Aug. 9, 2000); *Boyer v. Taylor*, No. 06-694-GMS, 2013 WL 1332443, at *15 (D. Del. Mar. 30, 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 551 (1979) (holding content-neutral policy prohibiting pretrial detainees from possessing any hardbound books, when implemented to address contraband concerns, did not violate First Amendment principles).

The cases cited by Plaintiff, *Williams v. Brimeyer* and *Murphy v. Missouri Dep't of Corrections,* involve a different factual situation. In *Williams*, the plaintiff was challenging a ban on materials he requested from the Church of Jesus Christ Christian. *Williams*, 116 F.3d at 352. The court found the denial of CJCC materials without review of the individual content was in

4

effect a blanket ban of the materials of a particular religion and a violation of the plaintiff's First Amendment rights. *Id.* at 353-54.

*Murphy* similarly involved an attempt to limit access to a particular viewpoint or religion. The plaintiff challenged a mail policy operating as a total ban on Aryan Nation materials. *Murphy*, 814 F.2d at 1256. The Eighth Circuit agreed that the policy, as implemented to prohibit prisoners from receiving any Aryan Nation materials through the mail, violated the plaintiff's right to free speech and to the free exercise of religion. *Id.* at 1257.

Here, the policy at issue did not attempt to ban any particular viewpoint. The version of IMPP 12-120A at issue appears to have had a rational basis reasonably related to important penological interests, thus not running afoul of the First Amendment. *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

As for Plaintiff's assertion that *Battling the Administration* was legal material and its denial was an attempt to hinder his pursuit of legal action, Plaintiff attempts to bring an access to the courts claim. It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "to present a viable claim for denial of access, the inmate must allege and prove prejudice arising from Defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing."). An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53.

In order to satisfy the actual injury requirement, the plaintiff must show that, by denying plaintiff access to the book, prison officials frustrated or impeded his ability to file or litigate a

non-frivolous action. *Id.* at 351, 354–55; *see Faircloth v. Schwartz*, 2014 WL 446663 (D. Colo. Sept. 10, 2014); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from Defendants' actions."). He may allege actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed, frustrated or impeded. *Id*. at 350, 353.

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355; *see also Carper v. Deland*, 54 F.3d 613, 617 (10th Cir. 1995)("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus."). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis,* 518 U.S. at 356. Nor does an inmate's inability to effectively litigate once in court fulfill the requirement of actual injury. *Lewis*, 518 U.S. at 354.

Plaintiff demonstrates no actual injury resulting from the temporary denial of access to *Battling the Administration*. Therefore, he fails to state a claim for violation of his constitutional right of access to the courts.

In addition to failing to state a claim under the First Amendment, the relief requested by Plaintiff is either disallowed, moot, or otherwise not available. Plaintiff seeks to recover compensatory damages for the alleged constitutional violation. However, his claim for damages is barred. Section 1997e(e) provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  This provision bars a prisoner from bringing a claim for compensatory damages without a prior showing of a physical injury.  *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999).  Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).   Plaintiff's request for damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e) because he has not described any physical injury that was caused by the alleged deprivations of his constitutional rights.

Plaintiff also seeks declaratory relief.  "A claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to 'seek[ ] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant[.]"  *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011)); *see also Church v. Polis*, 2022 WL 200661, at *4 (10th Cir. Jan. 24, 2022) ("But declaratory-judgment claims become moot if circumstances change such that the defendants are not 'actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights.'") (citation omitted).  Here, because the policy has already been changed and because Plaintiff is no longer subject to the policy, there remains no present dispute.  Plaintiff's claim for declaratory relief is moot and subject to dismissal.

Last, Plaintiff seeks punitive damages.  Punitive damages "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous

indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.  Plaintiff's request for punitive damages is subject to dismissal.

## V. Conclusion

In light of the *Martinez* Report and on further review of the Amended Complaint, the Court is considering dismissal of this matter for failure to state a claim on which relief can be granted. Plaintiff will be given an opportunity to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **June 28, 2024,** in which to show good cause why this action should not be dismissed for failure to state a claim upon which relief may be granted.

**IT IS SO ORDERED**.

**Dated May 31, 2024, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**